**Affirmed and Memorandum Opinion filed April 15, 2021**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00253-CV

## META PLANNING + DESIGN LLC; JUAN SERNA; CARLOS FRAGA; KENT MILSON; KATHRYN PARKER; JENNIFER CURTIS; RAMIRO PLATA, JR., Appellant

### V.

### BGE, INC., Appellee

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 18-DCV-257646**

## MEMORANDUM OPINION

Appellants Meta Planning + Design, LLC, Juan Serna, Carlos Fraga, Kent Milson, Kathryn Parker, Jennifer Curtis, and Ramiro Plata, Jr. appeal the trial court's denial of their motion to dismiss under the Texas Citizens' Participation Act, or "TCPA." We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellee BGE, Inc. ("BGE") is an engineering consulting firm assisting clients with design, planning, and project management services for residential, commercial, and industrial developments. Defendants-Appellants Juan Serna, Carlos Fraga, Kent Milson, Kathryn Parker, Jennifer Curtis, and Ramiro Plata, Jr. were all employees of BGE in its Houston Region Planning Department, and together made up most of that department.

According to BGE's petition, Serna, Fraga, Milson, Parker, Curtis, and Plata ("Former BGE Employees") began making preparations to compete with BGE by using and downloading BGE's proprietary, confidential, and trade secret information ("BGE Information") and ultimately left BGE and shared that information in furtherance of forming their own design planning firm, Defendant-Appellant Meta Planning + Design LLC ("Meta").

Upon learning of this scheme, BGE sued Meta and the Former BGE Employees (collectively, the "Meta Parties"), asserting claims that (a) the Meta Parties misappropriated trade secrets; (b) the Former BGE Employees breached their fiduciary duties to BGE (while Meta aided and abetted the same); and (c) the Meta Parties tortiously interfered with existing and prospective business relations. BGE also sought and obtained a temporary restraining order to prevent the Meta Parties' further use of the BGE Information, and sought a temporary injunction to prevent the Meta Parties from disclosing BGE Information.

BGE's pleadings and affidavits set out that (1) the Former BGE Employees violated provisions of their employment contract which prohibited discussing, disclosing, or sharing BGE Information, (2) the Former BGE Employees, while still working at BGE, copied and downloaded allegedly proprietary information which BGE describes as "client information, project information, planning and design methods and process developed by BGE [and]. . .plat drawings developed

2

by BGE"; (3) the Former BGE Employees created a new competing business (Meta Planning + Design); (4) the Former BGE Employees used the proprietary information to target BGE's existing and prospective clients, and for example used the plat drawing to compete for bids; and (5) as a result BGE lost out on jobs it would have otherwise secured.

The Meta Parties moved to dismiss under the TCPA, targeting all of BGE's claims and requests for injunctive relief. They argued that BGE's lawsuit was based on, related to, or in response to the Meta Parties exercise of their right of free speech or of their right of association. BGE responded, arguing that its breach of fiduciary duty claims fell outside the scope of the TCPA, that its trade-secret misappropriation and tortious interference claims were exempt from the TCPA as commercial speech pursuant to Section 27.010(b), and that even if its claims were subject to the TCPA, by virtue allegations pled and affidavits filed, it established a prima facie case as to all claims. The trial court held a hearing on the motion and denied the motion without stating its reason. The Meta Parties appealed.

## II. ISSUES AND ANALYSIS

On appeal, the Meta Parties complain that the trial court erred in denying their motion to dismiss because (1) they satisfied their burden to demonstrate that the TCPA applies to BGE's claims and request for injunctive relief, (2) BGE failed to show the commercial speech exemption applies, (3) and BGE did not establish by "clear and specific evidence a prima facie case for each essential element" of its claims and request for injunctive relief.

**Did the Meta Parties show by a preponderance of the evidence that the claims in question were based on, related to, or in response to their exercise of the right of free speech or their exercise of the right of association?**

The first step in the TCPA process requires the party filing a motion to

3

dismiss to "show[] by a preponderance of the evidence" that the claims in question are "based on, relate[] to, or are in response to" the party's exercise of the right of free speech, the right to petition, or the right of association. Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b) (replacing "shows by a preponderance of the evidence" with "demonstrates", and removing "relates to")). We review de novo whether the Meta Parties satisfied their burden to prove that the TCPA applies. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

***Legal Standard for Analyzing the Exercise of the Right of Free Speech***. Under the TCPA, a communication made in connection with a matter of public concern constitutes an exercise of the right of free speech. Tex. Civ. Prac. & Rem. Code § 27.001(3); *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code § 27.001(1). Under the version of the TPCA applicable to today's case, a "matter of public concern" is defined to include an issue related to "health or safety," "environmental, economic, or community well-being," and "a good, product, or a service *in the marketplace*." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)). The Texas Supreme Court has concluded that the phrase 'in the marketplace' requires that "communication about goods or services must have some relevance to a wider audience of potential buyers or sellers in the marketplace, as opposed to communications of relevance only to the parties to a particular transaction."

4

*Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 134 (Tex. 2019). "A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id*. at 137.

**Legal Standard for Analyzing the Exercise of the Right of Association.** The exercise of the right of association is defined under the TCPA as "a communication between individuals who join together to collectively express, promote, pursue, or defend *common* interests." 27.001(2). Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)). Up until three months ago, the word "common" as it appears in this provision remained undefined by this court. *Republic Tavern & Music Hall, LLC v. Laurenzo's Midtown Mgmt., LLC*, 14-19-00731-CV, 2020 WL 7626253, at *5 (Tex. App.— Houston [14th Dist.] Dec. 22, 2020, no pet. h.).[1] But our court like other courts

---

[1] In *Gaskamp*, a case involving facts the Meta Parties refer to as "identical" to the facts of this case, the First Court of Appeals discussed right-of-association decisions in cases involving similar allegations and earmarked our decision in *Abatecola*, noting that our conclusion that such claims fell within the scope of the TCPA was reached without an "in-depth" treatment of the phrase "common interest". *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.— Houston [1st Dist.] 2020, pet. dism'd w.o.m.) (op. on reh'g en banc), citing *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601 at *7 (Tex. App.— Houston [14th Dist.] June 26, 2018, pet. denied). As it surveyed other jurisdictions, the First Court of Appeals embraced the Fort Worth court of appeals' conclusion that as a threshold matter for analyzing such cases, the court must first resolve this question: What definition did the legislature intend to ascribe to the word "common" in the phrase "common interests"? *See id*. at 473-74, citing *Kawcak v. Antero Resources Corporation*, 582 S.W.3d 566 (Tex. App.—Fort Worth 2019, pet. denied). As indicated by the First Court of Appeals, at the time it addressed that question, we had not. But by the time this court did reach that question (later the same year), we came to the same answer as our courthouse cotenant: that the "common" interest is one relating to the public at large. *Republic Tavern & Music Hall, LLC,* 2020 WL 7626253, at *5. For reasons explained here and in *Republic Tavern & Music Hall, LLC*, our analysis of the freedom of association is now guided as informed by the definition of "common", whereas prior to this development it was not. *See e.g.*, *Abatecola v. 2 Savages Concrete Pumping, LLC*, 2018 WL 3118601 at *7; see also, *Reeves v. Harbor America Central, Inc.*, --- S.W.3d ----, 2020 WL 2026527, (Tex. App.—Houston [14th Dist.] 2020, pet. filed). Despite any inconsistency against

5

that have made the deep-dive into the statutory meaning of the word "common", have concluded it means "of or relating to a community at large: public." *See id.*; *see also TSA-Tex. Surgical Associates, L.L.P. v. Vargas*, 14-19-00135-CV, 2021 WL 729862, at *2 (Tex. App.—Houston [14th Dist.] Feb. 25, 2021, no pet. h.)(citing cases).

### *Were These Communications Related to a Matter of Public Concern?*

The only communications at issue in BGE's claims against the Meta Parties are the Former BGE Employees' acts of downloading trade secrets and proprietary information while working for BGE, the implicit communications made by the Former BGE employees in the formation of a competitive business, and communications made to prospective customers in the form of competitive bids for design planning services allegedly in violation of obligations imposed by the Former BGE's employee's employment agreements with BGE.

Since the parties filed their briefs, the Texas courts have been prolific in addressing "matter of public concern" (and various other nooks and crannies of the pre-2019 amendment TCPA); but two cases are particularly instructive. First, the Supreme Court's decision in *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC* significantly limited the scope of what qualifies as "a matter of public concern." 591 S.W.3d at 137 ("not every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern."). The court considered whether the oil-and-gas-lease lessee's counterclaim against a lessor, which were premised on the allegation that the lessor

---

our prior holdings, the decision to analyze the issue in the same manner as the court we share jurisdiction is a benefit of uniformity and predictability to the local legal community. *See Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878 (2020)(Frost, J., concurring and dissenting).

"had falsely told third-party purchasers of production from the lease that the lease was expired and that payments on the purchases should stop," qualified as "a matter of public concern." *Id*. at 130. Despite these allegations regarding communications to third party purchasers, the court found the record "devoid of allegations or evidence that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns." *Id*. at 136. The court explained such communications, "with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA." *Id*. at 136. The court further explained that while "private communications are sometimes covered by the TCPA", such particular situations involved "environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved." *Id.*

The second case, *Gaskamp v. WSP USA, Inc.* is a case the parties to our case have appropriately identified as factual similar; it involves similarly situated parties, claims, and allegations, including allegations by a company against its former employees that its former employees used the company's proprietary information to submit a bids "off the books" to a third party and which the former employees continued to work on after leaving the company. Relying on *Creative Oil & Gas*, our local sister court sitting en banc held in *Gaskamp* that communications made by the former employees in soliciting and procuring business from a third party did not constitute an exercise of the employees' free-speech rights because these communications did not have any "relevance to a public audience of buyers or sellers but instead were limited to 'the pecuniary interests of the private parties involved.'" *Gaskamp*, 596 S.W.3d at 479 (quoting *Creative Oil & Gas*, 591 S.W.3d at 136).

Following *Creative Oil* and *Gaskamp*, we conclude that none of the communications allege by BGE involve issues based on, related to, or in response to "health or safety," "environmental, economic, or community well-being." Moreover, the Meta Parties failed to show that any of the alleged communications about design planning services were relevant to a wider audience of potential buyers or sellers in the marketplace. The communications and conduct at issue are only relevant to the limited group comprising the Meta Parties, BGE, and the group of BGE-clients and prospective BGE clients to whom BGE alleged that Meta Parties had targeted and submitted or planned to submit competing bids. Like the third-party purchasers in *Creative Oil* and the bid recipient in *Gaskamp*, the bid recipients who double as BGE customers in this case comprise of a limited, exclusive customer audience; not a broader marketplace. None of the communications alleged, including these discrete bids which were allegedly aided by proprietary design standards were relevant to a broader marketplace of potential buyers or sellers, and such communications, with their limited business audience concerning a private dispute, do not relate to a matter of public concern under the TCPA. *See Creative Oil & Gas, LLC*, 591 S.W.3d at 136; *Gaskamp*, 596 S.W.3d at 478-79.

### Was This the Exercise of Association for a Common Interest?

The Meta Parties alleged exercise of association did not relate to the community at large or the general public, but instead relate to an alleged breach of obligations derived from a private employment relationship between private parties. *See TSA-Tex. Surgical Associates, L.L.P. v. Vargas*, 14-19-00135-CV, 2021 WL 729862, at *3 (Tex. App.—Houston [14th Dist.] Feb. 25, 2021, no pet. h.)(citing cases). Under the court's newly adopted definition of the word "common" we agree that the formation of the new business venture is insufficient

to show a common interest, i.e., it is not related to a community at large. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd w.o.m.) (op. on reh'g en banc). Likewise, the conduct and communications, involved in allegedly misappropriating BGE information and trade secrets and related torts benefitted only the Former Employees. *See id*.

### III. CONCLUSION

Because the Meta Parties failed to show that the actions alleged by BGE are based on, in response to, or related to appellants' exercise of the right to free speech or of association, we overrule their complaint to the trial court's order denying their motion to dismiss, and accordingly affirm the trial court's judgment.


/s/     Randy Wilson
Justice

Panel consists of Justices Jewell, Spain, and Wilson.